No. 21-1010 & 21-1012

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

————————

HUS HARI BULJIC, et al.,

*Plaintiffs-Appellees*,

v.

TYSON FOODS, INC., et al.,

*Defendants-Appellants*.

————————

OSCAR FERNANDEZ,

*Plaintiff-Appellee*,

v.

TYSON FOODS, INC., et. al.,

*Defendants-Appellants*.

————————

On Appeal from the United States District Court
for the Northern District of Iowa,
Nos. 20-cv-2055 & 20-cv-2079

————————

# MOTION TO STAY THE ISSUANCE OF THE MANDATE

————————

PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
C. HARKER RHODES IV
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
paul.clement@kirkland.com

*Counsel for Appellants Tyson Foods, Inc.,
Tyson Fresh Meats, Inc., John H. Tyson,
Noel W. White, Dean Banks, Stephen R.
Stouffer, and Tom Brower*

February 28, 2022

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION .......................................................................... 1

BACKGROUND ............................................................................ 2

    A.    Factual Background ........................................................ 2

    B.    Procedural Background .................................................. 4

ARGUMENT ................................................................................ 5

I.    Tyson's Petition Will Present A Substantial Question ................................... 7

    A.    The Question Presented Has Sharply Divided Lower Courts .............. 7

    B.    The Question Presented Is Substantial On Its Merits ........................ 10

II.    There Is Eminently Good Cause For A Stay, As Tyson Will Suffer Irreparable Harm Without One .................................................. 12

CONCLUSION .............................................................................. 15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 21-1010    Page: 2    Date Filed: 02/28/2022    Entry ID: 5131333

# TABLE OF AUTHORITIES

## Cases

*California v. Am. Stores Co.*,
492 U.S. 1301 (1989)..........................................................................................7, 9

*Fields v. Brown*,
519 F.Supp.3d 388 (E.D. Tex. 2021) ............................................. 6, 7, 8

*Flowserve Corp. v. Burns Int'l Servs. Corp.*,
423 F.Supp.2d 433 (D. Del. 2006)...................................................13

*Hollingsworth v. Perry*,
558 U.S. 183 (2010)...........................................................................6

*Jacks v. Meridian Res. Co., LLC*,
701 F.3d 1224 (8th Cir. 2012).........................................................5

*Jock v. Sterling Jewelers, Inc.*,
738 F.Supp.2d 445 (S.D.N.Y. 2010) ...............................................13

*John Doe I v. Miller*,
418 F.3d 950 (8th Cir. 2005)........................................................6, 7

*Johnson v. Tyson Foods, Inc.*,
2021 WL 5107723 (W.D. Tenn. Nov. 3, 2021)...................................8

*Maryland v. King*,
567 U.S. 1301 (2012).....................................................................9, 10

*Northrop Grumman Techs. Servs. Inc. v. DynCorp Int'l LLC*,
2016 WL 3346349 (E.D. Va. June 16, 2016)....................................14

*Reed v. Tyson Foods, Inc.*,
2021 WL 5107725 (W.D. Tenn. Nov. 3, 2021)...................................9

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007).............................................................5, 8, 10, 11

*Wazelle v. Tyson Foods*, Inc.,
2021 WL 2637335 (N.D. Tex. June 25, 2021).................................6, 8

*Willingham v. Morgan*,
395 U.S. 402 (1969)..........................................................................13

**Statutes**

28 U.S.C. §1442........................................................................... 1, 7, 14

28 U.S.C. §1447..........................................................................13

42 U.S.C. §§5195 et seq..................................................................3

**Rules**

Fed. R. App. P. 41........................................................................1, 5

**Other Authorities**

*Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020) ..........................................................................2

Doina Chiacu, *Trump Administration Unclear over Emergency Production Measure to Combat Coronavirus*, Reuters (Mar. 24, 2020), http://reut.rs/3rS3MN5 ..........................................................3

Letter from Sonny Perdue, *Re: Executive Order 13917 Delegating Authority Under the Defense Production Act with Respect to the Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19* (May 5, 2020)..........................4

Matt Noltemeyer, *Trump Meets with Food Company Leaders*, Food Business News (March 16, 2020), https://bit.ly/3t2fiXQ.....................3

iii

## INTRODUCTION

This case presents the important and recurring question of whether Tyson's actions in response to the onset of the COVID-19 pandemic, taken at the urging and under the guidance of federal officials including the President himself, entitle Tyson to federal-officer removal under 28 U.S.C. §1442(a)(1). While this Court concluded that they do not, the question has divided district courts throughout the country, and the Fifth Circuit is poised to consider it in a fully briefed appeal in mid-May. Tyson intends to file a petition for certiorari asking the Supreme Court to consider that question, and it respectfully requests that this Court stay its mandate pending the resolution of that petition.

Courts may stay the mandate pending the filing of a petition for certiorari upon a showing "that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). Those standards are readily satisfied here. The sharp division it has already produced among the lower courts demonstrates that the question presented is substantial, and also creates a very real prospect of a circuit split in the near-term, which would increase the chances of the Supreme Court granting certiorari. And this Court already recognized that Tyson would suffer irreparable injury if it is forced to litigate its federal defenses in state court before its right to a federal forum is vindicated when it granted Tyson a stay pending the resolution of this appeal. Maintaining that status quo a little longer will

allow the Supreme Court sufficient time to consider whether to review this substantial and important question of federal law before Tyson is forced to suffer the very irreparable harm that the federal-officer removal statute is designed to prevent.

**BACKGROUND**

### A.    Factual Background

In February and March 2020, COVID-19 began its rapid spread across the United States, creating sudden, dramatic, and virtually unprecedented disruption. On March 13, 2020, the President declared a national state of emergency, retroactive to March 1, 2020. *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020). As the federal government mobilized to respond, one area of acute concern was protecting the nation's food supply, which suffered massive disruptions as stay-at-home orders prompted a potent combination of panic buying and decreased production stemming from labor constraints.

To respond to this impending crisis, the federal government promptly enlisted the help of major food industry companies, including Tyson. Just two days after declaring a national emergency, the President personally spoke with Tyson and other industry leaders to convey that henceforth they would be "working hand-in-hand with the federal government," "24 hours around the clock," to ensure that "food and essentials are constantly available." Matt Noltemeyer, *Trump Meets with Food*

2

*Company Leaders*, Food Business News (March 16, 2020), https://bit.ly/3t2fiXQ. Invoking the "critical infrastructure" framework developed for responding to national emergencies, 42 U.S.C. §§5195 et seq., numerous federal agencies proceeded to take whatever steps were necessary to ensure that Tyson could continue to operate, be that securing personal protective equipment and essential-worker designations for Tyson's employees, providing constantly evolving guidance on what health and safety measures should be taken in plants, or ensuring that the federal inspectors who must be present for a meat-processing facility to operate would not become a bottleneck. *See, e.g.*, A137-140; A314-317A157, A338; A171-177, A352-360. And the President made clear from the outset that "[t]he Defense Production Act is in full force, but haven't had to use it because no one has said NO!" Doina Chiacu, *Trump Administration Unclear over Emergency Production Measure to Combat Coronavirus*, Reuters (Mar. 24, 2020), http://reut.rs/3rS3MN5.

Despite the federal directives to the meat-processing industry to continue operating in accordance with federal guidance, state and local officials began trying to shut down meat-processing plants. A48, A279. In response, the President again invoked the DPA and issued Executive Order 13917, which delegated authority to the Secretary of Agriculture to "ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA." A28. On May 5, 2020, acting under Executive Order 13917, the

3

Secretary of Agriculture instructed meat-processing plants to either remain open or submit written plans to reopen. Letter from Sonny Perdue, *Re: Executive Order 13917 Delegating Authority Under the Defense Production Act with Respect to the Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19* (May 5, 2020).

## B. Procedural Background

Plaintiffs represent the estates of four employees at Tyson's meat-processing facility in Waterloo, Iowa, who contracted COVID-19 and died of related complications. A41-42, A273-274. Plaintiffs filed suit in Iowa state court, alleging that Tyson failed to take adequate precautions and abide by federal guidance to prevent employees from contracting COVID-19. A56-66, A286-297. Plaintiffs also alleged that Tyson executives and supervisors made fraudulent misrepresentations about the presence of COVID-19 at the plant, the efficacy of the safety measures Tyson implemented, and the need to keep the plant open to avoid national meat shortages. A53-55, A59, A63-66, A283-286, A289, A294-96.

Tyson removed the cases to the U.S. District Court for the Northern District of Iowa on federal-officer removal grounds. A22-37, A211-228. Plaintiffs moved to remand, and the district court granted their motions. ADD1-31, ADD32-60. The court determined that Tyson failed to show that it was acting under the direction of federal officers, that there was an insufficient "causal connection" between the

4

actions Tyson claims it took under federal direction and Plaintiffs' injuries, and that Tyson lacked colorable federal defenses. ADD25-28, ADD54-59.

Tyson appealed, and a panel of this Court affirmed, concluding that Tyson failed to establish that it was acting under the direction of federal officers. The panel recognized that a private entity is entitled to federal-officer removal when its actions "involve an effort to *assist*, or to help *carry out*" a "basic governmental task[]." Op.11 (quoting *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012), and *Watson v. Philip Morris Companies*, 551 U.S. 142, 153 (2007)). But according to the panel, Tyson's activities did not qualify as a "basic government task" because "the fact that an industry is considered critical does not necessarily mean that every entity within it fulfills a basic governmental task." Op.14. Nor, according to the panel, was Tyson engaged in "an effort to *assist*, or to help *carry out*" any federal tasks because the federal government took a "cooperative approach" rather than expressly "direct[ing]" Tyson what to do. Op.15-16. Tyson filed a motion for rehearing, which this Court denied on February 22, 2022.

## ARGUMENT

This Court may stay its mandate pending the filing of a petition for certiorari upon a showing "that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1) To determine whether a stay is warranted, this Court has looked to the stay factors articulated by the Supreme Court,

5

*i.e.*, whether there is "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam); *see John Doe I v. Miller*, 418 F.3d 950, 951 (8th Cir. 2005). Those considerations demonstrate that a stay is warranted here.

While this Court concluded that Tyson's interactions with the federal government in the early days of the pandemic do not satisfy the "acting under" test for federal-officer removal, several district courts have reached the opposite conclusion. *See, e.g.*, *Fields v. Brown*, 519 F.Supp.3d 388 (E.D. Tex. 2021); *Wazelle v. Tyson Foods*, Inc., 2021 WL 2637335 (N.D. Tex. June 25, 2021). The Fifth Circuit rejected an effort to seek appellate review of one of the decisions siding with Tyson on this issue, *see Fields v. Brown*, 519 F.Supp.3d 388, *petition for interlocutory appeal denied*, No. 21-90021 (5th Cir. June 21, 2021), and it plans to hear oral argument in May in an appeal from a decision remanding to state court. Given the sharp division that this issue has already produced among the district courts that have considered it, there is at least a reasonable prospect that the Fifth Circuit will disagree with this Court and create a square circuit split, which would significantly increase the chances of Supreme Court review and reversal. Yet absent a stay, that relief would come too late to prevent Tyson from suffering the irreparable harm of being

6

forced to litigate this case in state court a case in which it is entitled.  Indeed, this Court already recognized as much when it granted Tyson a stay pending the resolution of this appeal.    Extending that stay pending the disposition of a timely filed petition for certiorari gives the Supreme Court the same opportunity to review the issue before irreparable injury is suffered that this Court has already enjoyed.

## I.  Tyson's Petition Will Present A Substantial Question.

### A.  The Question Presented Has Sharply Divided Lower Courts.

A "conflict in authority among the courts" is a telling sign that a petition will present a substantial question, as that is an important consideration in Supreme Court review. *John Doe I,* 418 F.3d at 952; *see, e.g.*, *California v. Am. Stores Co.*, 492 U.S. 1301, 1306 (1989) (O'Connor, J., in chambers).  There is just such a division here, on an issue that has already recurred several times in the past year alone.

While this Court concluded that Tyson failed to establish that it was "acting under" the direction of federal officers for purposes of 28 U.S.C. §1442(a)(1), several district courts have reached the opposite conclusion on the same basic facts. *Fields* is illustrative.    There, too, the court considered whether Tyson's "interact[ions] with multiple government agencies," the President, and other federal officials to aid in the federal government's efforts to secure the food supply during the early days of the COVID-19 pandemic entitled Tyson to federal-officer removal. 519 F. Supp. 3d at 392-93.  And that court reached the exact opposite conclusion of

7

this Court: that Tyson was indeed acting under the direction of federal officers when it engaged in "'an effort to help assist, or carry out, the duties and tasks of the federal superior' … by working directly with the Department of Agriculture and the FSIS to guarantee that there was an adequate food supply." *Id.* at 393 (quoting *Watson*, 551 U.S. at 152).

Other district courts have followed the *Fields* court's lead and held that Tyson was acting under federal direction in responding to the national crisis that COVID-19 created. In *Wazelle*, the court held that Tyson was "'acting under' the directions of federal officials when the federal government announced a national emergency on March 13, 2021 and designated Tyson Foods as 'critical infrastructure,'" and that Tyson was therefore entitled to federal-officer removal. 2021 WL 2637335 at *5. And two other courts in the Sixth Circuit have explicitly endorsed the reasoning of *Fields* and *Wazelle* in slightly different contexts. In *Johnson v. Tyson Foods, Inc.*, 2021 WL 5107723 (W.D. Tenn. Nov. 3, 2021), the court likewise held "[Tyson was] 'acting under' the directions of federal officials" because it "'interacted,' 'collaborat[ed],'" and 'work[ed] directly with' federal officers to assist the U.S. government to fulfill the government's responsibility of 'guarantee[ing] that there was an adequate food supply,'" again considering the exact interactions with the federal government at issue in this case. *Id.* at *4; *see also Reed v. Tyson Foods,*

Appellate Case: 21-1010     Page: 12     Date Filed: 02/28/2022 Entry ID: 5131333

*Inc.*, 2021 WL 5107725, at *4 (W.D. Tenn. Nov. 3, 2021) (adopting the reasoning of *Fields* and *Wazelle*).

That division among the district courts underscores that the question presented here is substantial, and many of those decisions are already up on appeal, which increases the prospects of a circuit split in the near future as well. For instance, the Fifth Circuit has tentatively calendared oral argument in one consolidated appeal addressing these issues for its May 2022 sitting. *See Glenn v. Tyson Foods, Inc.*, No. 21-40622 (5th Cir., Feb. 14, 2022), *consolidated with Chavez v. Tyson Foods, Inc.*, No. 21-11110 (5th Cir.). The final dispositions in *Fields* and *Wazelle*, in which Tyson ultimately prevailed on the merits, have also been appealed, with appellants challenging the district courts' denial of motions to remand. *See Fields v. Brown* (5th Cir. No. 21-40818); *Wazelle v. Tyson* (5th Cir. 22-10061). Given that the district courts in the Fifth Circuit have split equally on this question, there is certainly a fair chance that the Fifth Circuit will agree with Tyson and determine that federal-officer removal was appropriate here, thereby deepening the "conflict among the lower courts on [this] important and recurring issue." *Am. Stores Co.*, 492 U.S. at 1306. The very real possibility that a circuit split may develop while Tyson's petition for certiorari makes it even more likely that Tyson's petition for certiorari would be granted, particularly since these decisions illustrate that this issue is a recurring one. *See Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, CJ., in chambers).

Appellate Case: 21-1010     Page: 13     Date Filed: 02/28/2022 Entry ID: 5131333

(reasonable probability of granting certiorari existed where "decision conflict[ed] with decisions of the U.S. Courts of Appeals for the Third and Ninth Circuits as well as the Virginia Supreme Court").

### B. The Question Presented Is Substantial On Its Merits.

There are also substantial arguments in support of Tyson's petition on the merits. Indeed, the Supreme Court has noted that "considered analysis of courts on the other side of the split" can suffice to demonstrate "a fair prospect that [the Supreme] Court will reverse." *King*, 567 U.S. at 1303. There is just such considered analysis here.

As courts on the other side of this issue have recognized, there are strong arguments that Tyson was "acting under" the direction of federal officials in keeping its plants operational based on guidance and direction of multiple federal agencies and the President himself. To be acting under a federal officer, a private party need only be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior," through a relationship that "involves 'subjection, guidance, or control.'" *Watson*, 551 U.S. at 151-55 (quoting Webster's New International Dictionary 2765 (2d ed. 1953)). To be sure, the assistance the private party provides the federal government must "go[] beyond simple compliance with the law and help[] officers fulfill other basic governmental tasks." *Id.* at 153. But what Tyson was asked to do in the early days of the pandemic readily satisfies that test. The

10

answer to the national crisis that COVID-19 wrought was not more garden-variety regulation of the sort found insufficient in *Watson*. It was an extraordinary series of actions by the federal government and Tyson to ensure that Tyson's plants remained operational in the early days of the pandemic, under close and constant federal direction, in service of the critical goal of preventing a nationwide food shortage.

The panel insisted that Tyson could not have been "helping" the federal government "fulfill [a] basic governmental task[]," *id.* at 153, because, "while the federal government may have an interest in ensuring a stable food supply, it is not typically the 'dut[y]' or 'task[]' of the federal government to process meat for commercial consumption." Op.14. But the "acting under" test does not require the task in which a private party was enlisted to be one the federal government "typically" performs itself. It simply requires the private party to have been operating under federal "subjection, guidance, or control." *Watson*, 551 U.S. at 151. The panel's misguided analysis has the perverse effect of denying federal-officer removal when it is needed most: during a national emergency. It is precisely in an emergency that state law—especially tort law applied retroactively and with the benefit of hindsight—can threaten national priorities. And it is precisely in an emergency that the federal government needs unusual degrees of support from private industry, not demands for formal orders before they lend a hand.

11

Particularly given the division that this issue has already produced in the lower courts, the question presented is certainly sufficiently substantial to create at least a fair prospect that the Supreme Court would agree with Tyson that the panel's decision contravenes the Supreme Court's own decisions and the animating purposes of federal-officer removal.

## II. There Is Eminently Good Cause For A Stay, As Tyson Will Suffer Irreparable Harm Without One.

The "good cause" prong of the stay test is easily satisfied, as Tyson faces clear irreparable harm absent a stay. Indeed, this Court already recognized as much when it stayed it granted Tyson a stay the resolution of this appeal, which required a showing of irreparable harm. *See* Order, *Buljic v. Tyson Foods, Inc.* (No. 21-1010, Feb. 8, 2021). Other courts have likewise recognized the importance of granting a stay to allowing for orderly appellate consideration before state-court litigation ensues. *See Glenn v. Tyson Foods, Inc.*, No. 9:20-cv-00184-MJT (E.D. Tex. 2021), Dkt.44, at 6 ("Tyson has made a strong showing that it faces 'irreparable harm' absent a stay."); *Chavez v. Tyson Foods, Inc.*, No. 3:21-cv-01184-C (N.D. Tex. 2021), Dkt.53, at 1. Indeed, in every case in which Tyson's federal-officer removal has been considered, either motion was granted or a stay motion was entered, either by the district court or the court of appeals, in order to facilitate orderly appellate review.

12

If a stay is denied and the Iowa state court adjudicates this case while this appeal is pending, Tyson will be subjected to the very state-court proceedings that federal-officer removal is designed to prevent. *Cf. Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have [federal-officer] defenses litigated in the federal courts."). Congress has expressed a clear intention that federal-officer removal questions should be litigated to a final disposition in federal court by granted a right to appeal an adverse federal-officer removal remand order. 28 U.S.C. §1447(d). Yet absent a stay, the parties will be forced to litigate in state and federal parallel tracks at once, before Tyson can exhaust all avenues of relief. "[F]orcing the parties to simultaneously litigate this case in state and federal court would subvert a clear expression of congressional intent and constitute irreparable harm." *Glenn*, Dkt.44, at 6; *see also Jock v. Sterling Jewelers, Inc.*, 738 F.Supp.2d 445, 448 (S.D.N.Y. 2010) ("unnecessary, duplicative litigation can warrant a stay"); *Flowserve Corp. v. Burns Int'l Servs. Corp.*, 423 F.Supp.2d 433, 439 (D. Del. 2006) (granting injunction to avoid "duplicative litigation and the squandering of judicial resources"). There would be no way to unring that bell or compensate Tyson for the time and expense spent litigating in state court if its right to removal is ultimately vindicated by the Supreme Court.

13

That is precisely why "[s]everal other courts have recognized that where the pending appeal addresses remand of a case initially removed pursuant to 28 U.S.C. §1442, a stay is appropriate to prevent rendering the statutory right to appeal 'hollow.'" *Northrop Grumman Techs. Servs. Inc. v. DynCorp Int'l LLC*, 2016 WL 3346349, at *3 (E.D. Va. June 16, 2016). This Court likewise recognized that Tyson would be irreparably harmed if it were forced to litigate this case in state court before the remand issue is fully and finally decided when it granted Tyson a stay pending appeal. The court should follow the same course here and prevent Tyson from suffering irreparable injury before it can exhaust all avenues of review of its claim to federal-officer removal.

14

## CONCLUSION

This Court should stay the issuance of the mandate pending the disposition of a timely filed petition for a writ of certiorari.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
ERIN E. MURPHY
C. HARKER RHODES IV
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
paul.clement@kirkland.com

*Counsel for Appellants Tyson Foods, Inc., Tyson Fresh Meats, Inc., John H. Tyson, Noel W. White, Dean Banks, Stephen R. Stouffer, and Tom Brower*

February 28, 2022

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d)(2)(A), I hereby certify that the textual portion of the foregoing motion (exclusive of the tables of contents and authorities, certificates of service and compliance, but including footnotes) contains 3,279 words as determined by the word counting feature of Microsoft Word 2016.

Pursuant to Circuit Rule 28A(h), I also hereby certify that electronic files of this brief have been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus-free.

<u>s/Paul D. Clement</u>
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement
